1
2
3
4
5
6
7
8
9
10
11
12

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTINA HERNANDEZ, | ) | Case No. ED CV 14-1741-AS |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**PROCEEDINGS**

On August 27, 2014, Plaintiff filed a Complaint seeking review of the denial of her applications for Disability Insurance Benefits and Supplemental Security Income. (Docket Entry No. 3). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 8, 10). On December 24, 2014, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 13-14). The parties filed a Joint Position Statement ("Joint

Stip.") on April 23, 2015, setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 17).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed August 28, 2014 (Docket Entry No. 7).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, formerly employed as title clerk, cashier, and license clerk (see AR 31, 219-24), filed an application for Disability Insurance Benefits on August 19, 2011 and an application for Supplemental Security Income on August 31, 2011. Both applications alleged a disability since November 28, 2010. (See AR 184-93). On January 25, 2013, the Administrative Law Judge ("ALJ"), Jesse J. Pease, heard testimony from Plaintiff and vocational expert Kristan Sagliocco Cicero. (See AR 28-50). On February 21, 2013, the ALJ issued a decision denying Plaintiff's applications. (See AR 10-21). After determining that Plaintiff had severe impairments -- "fibromyalgia; hypertension; asthma; left shoulder rotator cuff tear; and low back pain secondary to mild degenerative disc disease" (AR 13)[1] --, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform light work[3] with the

---

[1]    The ALJ found that Plaintiff's other impairments -- status post lateral internal sphincterotomy, right foot mild bunion deformity, and anxiety disorder, not otherwise specified with mild depression -- were nonsevere. (See AR 13-14).

[2]    A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[3]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."
(continued...)

following limitations: lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking for 6 hours out of an 8-hour workday with regular breaks; sitting for 6 hours out of an 8-hour workday with regular breaks; unlimited pushing and/or pulling, other than as indicated for lifting and/or carrying; climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling occasionally; no climbing ladders, ropes, or scaffolds; no exposure to extreme cold, extreme heat, and excessive air pollutants; no full neck extension to the left; limited to frequent (as opposed to constant) placing of the head in a downward position; and no above shoulder work with the left non-dominant arm. (AR 15-19). Finding that Plaintiff was capable of performing her past relevant work, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 19-20).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 5). The request was denied on July 16, 2014. (AR 1-3). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in failing to properly: (1) consider Plaintiff's testimony and make proper credibility findings; and

---

[3] (...continued)
20 C.F.R. §§ 404.1567(b), 416.967(b).

(2) consider the lay witness testimony.  (See Joint Stip. at 3-13, 25-28, 30).

**DISCUSSION**

**A.   The ALJ Properly Assessed Plaintiff's Credibility**

Plaintiff asserts that the ALJ failed to articulate sufficient reasons to find her testimony and statements not credible (See Joint Stip. at 3-13, 25-28).  Defendant asserts that the ALJ provided proper reasons for finding Plaintiff not credible.  (See Joint Stip. at 13-25).

Plaintiff made the following statements in a "Function Report - Adult" dated September 11, 2011 (see AR 231-38):

> She lives in an apartment with family (her sister and niece).  Her day consists of washing up, brushing her teeth, combing her hair, watching television, washing a few dishes, resting, eating, vacuuming some days if her arms and legs do not hurt, and going to bed.  Her sleep is affected because of her impairments (she has to take medicine to sleep, but even then does not sleep well).  She has no problem bathing, caring for her hair, shaving, self-feeding and using the toilet.  She does not need reminders to take care of her personal needs and grooming or with taking her medication.  She prepares "easy" meals like sandwiches, frozen dinners and spaghetti-o's twice a day.  Three times a week (with rest breaks) she does dishes, vacuums, folds clothes and dusts.  (See AR 231-33, 235).

4

She goes outside twice a week, and can go out alone. She drives a car. She shops for food every other week for thirty minutes. The market is the only place she goes on a regular basis. (See AR 234-35).

She can pay bills, count change, handle a savings account and use a checkbook (but she makes a lot of mistakes). (See AR 234-35).

She watches a lot of television and does not engage in hobbies because she is too tired. She only spends time with her sister and niece, and rarely (once a month) visits her other brothers and sisters. Since she is tired and in pain all the time, she is irritable and likes to be alone. (See AR 235-36).

Her impairments affect her lifting, squatting, standing, reaching, walking, sitting, kneeling, hearing, stair climbing, memory, completing tasks, concentration, understanding, following instructions, using hands, and getting along with others. (See AR 236).

She is unable to lift much because of the pain in her hands, arms and neck. She is unable to stand and sit for long periods of time because of her back pain and sciatic nerve pain. She is unable to reach because she does not have strength in her arms. She is unable to concentrate. She can pay attention for fifteen minutes, and usually does not finish

what she started.   She is unable to hear well out of her left ear.   She can walk less than half a block and needs to rest for ten minutes before she can resume walking.   She does not follow spoken instructions well when she does not sleep well. (See id.).

She gets along okay with authority figures, but becomes irritated with them.   She does not handle stress well.   She does not like changes in her routine.   She has a fear of falling.   (See AR 237).

Plaintiff testified at the administrative hearing as follows (see AR 30-45):

She lives in a house with her sister (who supports her). She worked for two months after her alleged onset date as a cashier for Walmart.   She left that job because of her asthma, her inability to lift items, and her inability to work eight hours a day.  (See AR 31-33, 42, 44).

Hot weather and cold weather exacerbate her breathing and pain.   She has "bad sciatic" causing constant pain behind her right leg.   Her sciatic pain, which she has had the last ten to fifteen years, has worsened.   She has to get up and move every 15 minutes.   She is unable to do her past work as a title clerk because she has a hard time sitting for long periods of time.   (See AR 32-35, 37-38).

Her worst pain is in her shoulder and neck, then her right leg, then her right arm.   The pain in her neck and shoulder are constant, and her range of motion is limited. Surgery has not been recommended for her neck or low back pain.   (<u>See</u> AR 35-36).

She has fibromyalgia causing her pain all over.   She has deteriorative joint disorder.   She has a left shoulder torn rotator cuff that limits what she can lift (because of the pain).   She has trouble turning her neck to the left and down. (<u>See</u> AR 36-37, 40-41).

She can stand for about twenty to twenty-five minutes. She can walk ten minutes before it starts to "really hurt." She cannot lift very much because of lack of strength in her arms.   She can lift a gallon of milk.   She can lift two gallons of milk, but it would strain her neck. (<u>See</u> AR 38-39).

She is unable to dress herself, and she does not clean or (because of her forgetfulness) cook (she eats TV dinners). (<u>See</u> AR 44-45).

Although she has a "little depression," it "currently" is not "too much."   (<u>See</u> AR 40).

Although she takes medication for her pain, it does not help.   She takes medication for her asthma every day.   (<u>See</u> AR 42-44).

After summarizing Plaintiff's testimony at the hearing and Plaintiff's statements in the Adult Function Report (see AR 15-16), the ALJ addressed Plaintiff's credibility as follows:

> The undersigned finds the claimant's allegations concerning the intensity, persistence and limiting effects of her symptoms are less than fully credible. When the undersigned assesses the claimant's credibility, the undersigned considers a number of factors and utilizes those factors that are relevant to this claim.
>
> Despite her impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction. The claimant is able to take care of her personal needs without assistance despite complaints of disabling back pain, neck pain, and shoulder pain (Ex. B5E, p. 2). She also prepares her own simple meals twice a day (Ex. B5E, p. 3). Moreover, she is able to perform household chores like washing dishes, vacuuming, dusting, and folding clothes. She also shops for groceries in stores without assistance (Ex. B5E, p. 4). The claimant's ability to participate in such activities diminishes the credibility of her allegations of functional limitations. Furthermore, some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment.

The claimant also alleged that she has difficulty concentrating (Testimony; Ex. B5E, p. 6). The undersigned observed the claimant throughout the hearing. The claimant did not demonstrate or manifest any difficulty concentrating during the hearing. During the time when the claimant was being questioned, the claimant appeared to process the questions without difficulty, and to respond to the questions appropriately and without delay. The claimant paid attention throughout the hearing. Also, as discussed in more detail above, the claimant did not demonstrate any problems concentrating during the psychiatric consultative examination with Dr. Abejuela (Ex. B7F, p. 4). Therefore, the undersigned finds that the claimant's subjective allegation is less than fully credible.

The undersigned has also considered the opinions of the claimant's treating doctors in determining the credibility of her allegations. On March 18, 2009, Dr. Robert M. Brewer opined the claimant does not qualify for disability (Ex. B1F, p. 7). At the time Dr. Brewer made his opinion, he was treating the claimant for multiple problems including fibromyalgia, chronic neck pain, and depression. There is nothing in the record indicating that the claimant's conditions worsened after March 18, 2009. Thus, it would be reasonable to infer that the claimant's conditions do not currently cause disabling symptoms or functional limitations.

* * * *

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's and her sister's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The undersigned has reviewed and considered the complete medical history consistent with 20 CFR 404.1512(d) and 416.912(d) (Exs. B1F - B13F). The treatment records reveal the claimant received routine and conservative treatment since the alleged onset date. The positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein.

The medical evidence of record does not support the claimant's subjective allegations. The claimant's allegations regarding the severity of her symptoms and limitations are greater than expected in light of the objective evidence of record. . . .

(AR 16-17).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen v. Chater, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

Here, substantial evidence supports the ALJ's finding that Plaintiff's testimony about the intensity, persistence and limiting effects of the symptoms was not fully credible.

The ALJ's partial discounting of Plaintiff's testimony based on her ability to perform certain daily activities, such as taking care of her personal needs without assistance, preparing her own simple meals, washing dishes, vacuuming, dusting, folding clothes, and shopping without assistance was not a clear and convincing reason. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does

1   not need to be 'utterly incapacitated' in order to be disabled.");
2   <u>Reddick v. Chater</u>, <u>supra</u> ("Only if the level of activity were
3   inconsistent with the Claimant's claimed limitations would these
4   activities have any bearing on Claimant's credibility.").

5

6   However, the ALJ properly discredited Plaintiff's testimony about
7   her difficulty concentrating.   While the ALJ's reliance on her own
8   observations of Plaintiff at the hearing, by itself, could not serve as
9   substantial evidence to find Plaintiff not fully credible, <u>see</u> <u>Fair v.</u>
10  <u>Bowen</u>, 885 F.2d 597, 602 (9th Cir. 1989); <u>Perminter v. Heckler</u>, 765 F.2d
11  870, 872 (9th Cir. 1985) (condemning an ALJ's reliance of a claimant at
12  a hearing as "'sit and squirm' jurisprudence"), the ALJ's observation
13  that Plaintiff did not demonstrate any difficulty concentrating during
14  the hearing, combined with the consultative examiner's statement in his
15  report dated November 22, 2011 that Plaintiff's "[a]ttention span and
16  concentration are intact" (<u>see</u> AR 318), constituted a clear and
17  convincing reason.   See <u>Smolen v. Chater</u>, <u>supra</u>, 80 F.3d at 1284 (In
18  assessing a claimant's alleged symptoms, an ALJ may consider
19  "observations of treating and examining physicians and other third
20  parties"); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1259 (9th Cir. 1992)
21  (upholding credibility rejection where the ALJ's observation of the
22  claimant at the hearing was one of several legitimate reasons stated);
23  <u>see also</u> <u>Morgan v. Commissioner</u>, 169 F.3d 595, 600 (9th Cir. 1999) ("The
24  inclusion of the ALJ's personal observations does not render the
25  decision improper.") (citation omitted).

26

27  Moreover, the ALJ properly found that Plaintiff's testimony was
28  less than fully credible based on Plaintiff's treating physician's

observations.  See Smolen, supra.  As the ALJ noted, on March 18, 2009, when Plaintiff's treating physician, Robert M. Brewer, M.D., was treating Plaintiff for inter alia fibromyalgia, chronic neck pain and depression, Dr. Brewer opined that Plaintiff did not qualify for disability.  (See AR 269-70 ["I do not believe that patient really qualifies for disability and in fact she even admits that she gets depressed quite often and that going to work actually helps her with her depression."]).  Although Plaintiff still was working in March 2009 and her alleged onset date was not until November 2010 (see Joint Stip. at 9), the ALJ properly relied on Dr. Brewer's statement since "[t]here is nothing in the record indicating that [Plaintiff's] conditions worsened after March 18, 2009." (See generally AR 265-68, 271-440).  Plaintiff has not cited to anything in the record showing that the conditions for which she obtained treatment in March 2009 worsened after that date (see Joint Stip. at 9-11).

Moreover, the ALJ properly partially discredited Plaintiff's testimony about her symptoms and limitations because it was not supported by the objective medical evidence (see AR 18-19).  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects); Morgan v. Commissioner, 169 F.3d at 599-600.

13

With respect to Plaintiff's lower back pain, the ALJ properly found that the evidence in the record did not support Plaintiff's testimony concerning the limiting effects of her symptoms. (See AR 17, citing AR 289 [a November 21, 2009 x-ray of Plaintiff's lumbar spine demonstrated "only mild degenerative changes at L2-3 and L3-4"]; AR 334 [an April 24, 2012 MRI of Plaintiff's lumbar spine revealed "mild degenerative disc disease and facet joint arthritis of the lumbar spine with mild bilateral neural forminal stenosis at L3-4 and L4-5"]; and AR 265-71 [Dr. Brewer, Plaintiff's treating physician from March 18, 2009 through February 11, 2009, did not note any neurological problems with Plaintiff's lower back, nor did he recommend surgery or the use of a TENS unit for pain].

The evidence cited by Plaintiff (see Joint Stip. at 9-10) -- a note of an April 9, 2009 office visit to Arkansas Specialty Orthopaedics (see AR 304 ["She has marked tenderness in the upper and mid trapezius muscles. There is lesser tenderness in the lower lumbar spine, hips, and shoulders."]); an August 10, 2009 note of an office visit to Arkansas Specialty Orthopaedics (see AR 303 ["On examination, there is mild diffuse tenderness in the trunk and extremities. There is no guarding or muscle spasm present."]); an October 19, 2009 office visit to Arkansas Specialty Orthopaedics (see AR 302 ["She has tenderness in the upper trapezius muscles, over the biceps tendons of the shoulder, along the vertebral border of the scapula, both sacroiliac joints, and both piriformis muscles."]); the November 21, 2009 x-ray of Plaintiff's lumbar spine discussed above (see AR 289); North Metro Medical Center Emergency Department Nursing Records dated November 21, 2009 (see AR 281-86 [Plaintiff complained of back pain that was shooting down her

legs]); a Cabot Medical Care Progress Note dated November 18, 2009 (see AR 296 [assessing Plaintiff with lumbar paraspinous muscle spasm]); a note of a January 11, 2010 office visit to Arkansas Specialty Orthopeadics (see AR 301 ["She has tenderness in the cervical spine, upper trapezius muscles, and the periarticular structures of the right shoulder, and right piriformis muscle.  Otherwise, examination of the trunk and extremities is unremarkable."]); a note of a February 22, 2010 office visit to Arkansas Specialty Orthopaedics (see AR 300 ["She has tenderness in the upper trapezius muscles.  It is moderate in severity. There is increase in tone.  She has throchanteric tenderness in the right side."]); notes of November 10, 2010 and December 3, 2010 office visits to Billy Creek Clinic (see AR 309-10 [reflecting Plaintiff's complaint of fibromyalgia]); a November 22, 2011 report of an internal medicine evaluation (see AR 328-29 ["There is tenderness to palpation in the low back.  Straight leg raising test is positive on both at 30 degrees, both sitting and supine.  Flexion 50º, extension 10º, lateral flexion 15º."; and diagnosing Plaintiff with fibromyalgia, hypertension and asthma]); notes of January 25, 2012 to March 8, 2012 visits to San Bernardino County Department of Public Health clinic ("San Bernardino County Clinic") (see AR 352-59 [reflecting Plaintiff's complaints of left shoulder pain and back pain, and diagnoses of fibromyalgia, hypertension and mild to moderate asthma]); a report of an April 24, 2012 MRI of Plaintiff's left shoulder (see AR 336); notes of an April 4, 2012 visit to San Bernardino County Clinic (see AR 350-51 [reflecting Plaintiff's continuing complaint of shoulder pain]); the April 24, 2012 MRI of Plaintiff's lumbar spine discussed above (see AR 334); notes of a May 16, 2012 visit to San Bernardino County Clinic (see AR 348-49 [reflecting Plaintiff's complaints of shoulder and back pain]); and

notes of a September 5, 2012 visit to Arrowhead Regional Medial Center (see AR 399-400 [reflecting Plaintiff's complaints of back pain and neck pain]) -- simply does not support Plaintiff's testimony concerning her symptoms and limitations related to her lower back.

With respect to Plaintiff's neck pain, the ALJ properly found that the objective evidence did not "substantiate [Plaintiff's] allegations of degenerative disc disease of the cervical spine."  As the ALJ noted, "the medical evidence suggests that [Plaintiff's] neck pain is associated with her fibromyalgia.  (AR 17, citing AR 399 (note of Plaintiff's September 5, 2012 office visit to Arrowhead Regional Medical Center ["Patient states that she was seen by rheumatologist in the past for her neck pain which she believes is associated with her fibromyalgia"], and AR 265 (note of Plaintiff's November 14, 2008 office visit to Dr. Brewer ["[F]ibrostic locations are moderately tender and there are myfascial trigger points noted in the posterior cervical region which reproduce [Plaintiff's] neck pain."']).  Although, as the ALJ noted (see AR 18), Plaintiff had a limited range of motion in her neck during a September 5, 2012 visit to Arrowhead Regional Medial Center (see AR 400), the objective medical evidence, as discussed above, does not fully support Plaintiff's testimony concerning her symptoms and limitations related to her neck.

The ALJ properly found that the objective evidence did not support Plaintiff's testimony concerning the delibitating effects of her left shoulder pain.  As the ALJ noted, an April 24, 2012 MRI of Plaintiff's left shoulder had revealed a "probable partial bursal surface tear of the rotator cuff with mild bursitis" (see AR 336), but only iboprofen

cream was prescribed and only physical therapy and staying active (not surgery) were recommended (<u>see</u> AR 400).

Although the ALJ incorporated environmental restrictions into the RFC to accommodate Plaintiff's asthma (<u>see</u> AR 15, 18), the ALJ properly found that the objective medical evidence did not support Plaintiff's testimony about the debilitating effects of her asthma.  As the ALJ noted (<u>see</u> AR 18), a December 20, 2010 Plethysmography Report demonstrated minimal obstructive lung defect and mild restrictive lung defect (<u>see</u> AR 313-14); and  subsequent examinations of Plaintiff's lungs did not reveal abnormal findings (<u>see</u> AR 380-81 [August 18, 2011, "Clear to auscultation bilaterally; normal breath sounds without added sounds]; AR 400 [September 5, 2012, "Lungs: Clear to auscultation bilaterally."]; and there was nothing in the record showing "in-patient hospitalizations as a result of her asthma."

Finally, the ALJ properly found that the objective medical evidence showed that Plaintiff's hypertension appeared to be under control by 2011 (<u>see</u> AR 18, citing AR 295 [a Cabot Medical Care Progress Note dated December 7, 2009 showed that Plaintiff's blood pressure reading was 132/90]); AR 307-10 [notes of office visits to Billy Creek Clinic on November 12, 2010, December 3, 2010, December 23, 2010, and January 7, 2011 showed blood pressure readings of 104/72, 116/74, 100/62 and 110/70, respectively]); AR 325, 327 [at the November 22, 2011 internal medicine examination, Plaintiff stated she takes medication for hypertension and that "her blood pressure had been normal"; and Plaintiff's blood pressure reading was 110/70]; and AR 342 [a note from a March 2, 2012 visit to Arrowhead Regional Medical showed a blood

1  pressure reading of 116/83]).  See Warre v. Comm'r of Soc. Sec., 439
2  F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled
3  effectively with medication are not disabling for the purpose of
4  determining eligibility for [disability] benefits.").

5

6       Since the ALJ properly partially discredited Plaintiff's testimony
7  about her symptoms and limitations based on the ALJ's and the examining
8  physician's observations of Plaintiff, Plaintiff's treating physician's
9  observations of Plaintiff, and the lack of objective evidence supporting
10  Plaintiff's testimony about her symptoms and limitations, any error in
11  finding that Plaintiff's testimony was not fully credible based on her
12  daily activities was harmless.  See Carmickle v. Comm'r, Soc. Sec.
13  Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008)(finding that the ALJ's
14  error in giving two invalid reasons for partially discrediting
15  Plaintiff's testimony was harmless where the ALJ gave valid reasons for
16  partially discrediting Plaintiff's testimony); see also Tommasetti v.
17  Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (an  ALJ's error is
18  harmless  "when it is clear from the record . . . that it was
19  'inconsequential to the ultimate nondisability determination.'"); Burch
20  v. Barnhart, supra, 400 F.3d at 679 ("A decision of the ALJ will not be
21  reversed for errors that are harmless.").

22

23  **B.   The ALJ Properly Assessed Plaintiff's Sister's Credibility**

24

25       Plaintiff asserts that the ALJ failed to properly consider
26  Plaintiff's sister's testimony.  (See Joint Stip. at 25-28, 30).
27  Defendant asserts that the ALJ provided germane reasons for rejecting
28  Plaintiff's sister's testimony.  (See Joint Stip. at 28-29).

Angelina K. Hernandez, Plaintiff's sister, made the following statements in a "Function Report - Adult - Third Party" dated September 12, 2011 (see AR 211-18):

She has known Plaintiff for 44 years.  If she is working, she spends about 4 hours a day with Plaintiff; otherwise she spends 8 to 10 hours a day with Plaintiff.  (See AR 211).

Plaintiff can do light house chores sparingly on a "good day."  Most days are "not so good" because of Plaintiff's asthma which causes coughing and shortness of breath.  Plaintiff's coughing and fibromyalgia causes her pain, and as a result Plaintiff has to lie down most of the day.  (See id.).

Plaintiff's pain and coughing affect Plaintiff's sleep (Plaintiff is unable to sleep).  However, Plaintiff has no problem with her personal care, and does not need reminders to take care of her personal needs and grooming or with taking her medication.  (See AR 213).

Plaintiff can prepare her own meals (i.e., sandwiches frozen foods, crock pot occasionally) once or twice a day, depending on her level of pain.  (Plaintiff used to cook full meals).  Food preparation takes Plaintiff 10 to 20 minutes.  (See id.).

Plaintiff is able to do some dishes, fold clothes, and dusting. Each chore takes about 1 to 2 hours (Plaintiff needs to stop and rest). (See id.).

Plaintiff goes outside 1 to 2 times a week. Plaintiff can go out alone and is able to drive a car. Plaintiff shops for food twice a month for approximately thirty minutes. (See id.).

Plaintiff can pay bills, count change, handle a savings account and use a checkbook, but Plaintiff makes a lot of mistakes (which is odd because Plaintiff is good with math). (See AR 214-15).

Plaintiff watches a lot of television and is not interested in "doing anything else" or in being around others. Plaintiff spends most of her time with her and her daughter. The only place Plaintiff goes on a regular basis is the grocery store. (See AR 215).

Plaintiff does not "want to deal with people because her pain is so bad." Plaintiff is "alone a lot" and is "irritable a lot of the time." (See id.).

Plaintiff's conditions affect her lifting, squatting, standing, reaching, walking, sitting, kneeling, hearing, stair climbing, memory, completing tasks, concentration,

20

understanding, following instructions, using hands and getting along with others.  (See id.).

Plaintiff can lift five pounds.  Plaintiff's physical activity is limited and depends on her pain.  Plaintiff can walk half a block (75 feet) before needing to stop and rest. Plaintiff can resume walking after about 10 minutes. Plaintiff can pay attention for ten to twenty minutes and cannot finish what she started.  Plaintiff leaves herself notes to remember things.  Plaintiff does not follow written instructions well; Plaintiff usually has to ask for help. Plaintiff can follow simple (but not complicated) spoken instructions.  (See id.).

Plaintiff does not get along with authority figure because she gets irritated easily.  Plaintiff does not handle stress well and does not like changes in her routine. Plaintiff is not confident and courageous any more, and is very fearful of falling.  (See id.).

The ALJ addressed Plaintiff's sister's testimony as follows:

The undersigned has read and considered the Third Party Function Report completed by the claimant's sister, Angelina K. Hernandez, on September 12, 2011 (Ex. B3E).  The statements made by the claimant's sister appear to be no more than a parroting of the subjective complaints already testified to by the claimant.  As discussed herein, the claimant's testimony

21

is highly suspect based on the discrepancy between the claimant's subjective complaints and the objective medical evidence. The repetition of the claimant's subjective complains through her sister does not make them any more credible. Accordingly, the undersigned gives little weight to the statements of the claimant's sister.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's and her sister's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 17).

The ALJ is required to give germane reasons for rejecting or partially rejecting lay witness testimony. See Carmickle v. Commissioner, supra, 533 F.3d 1155, 1164 (9th Cir. 2008); Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Smolen v. Chater, supra, 80 F.3d at 1288-89.

The ALJ's partial discrediting of the Plaintiff's sister's testimony because it was inconsistent with the objective medical evidence was a germane reason. See Bayliss v. Barnhart, 427 F.3d 1211,

1218 (9th Cir. 2015) (Inconsistency with the medical evidence is a germane reason for discrediting the testimony of a lay witness); <u>Lewis v. Apfel</u>, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."); <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir. 1984) ("The ALJ properly discounted lay witness testimony that conflicted with the available medical evidence.").

Moreover, the ALJ also properly partially discredited Plaintiff's sister's testimony, finding that it essentially "parroted" Plaintiff's testimony, some of which the ALJ properly found was not fully credible (which the Court has found was a proper credibility determination). <u>See Valentine v. Commissioner</u>, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the claimant's wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the claimant's wife's] testimony.").

///

///

///

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 27, 2016.

                                        /s/
                            ALKA  SAGAR
                    UNITED  STATES  MAGISTRATE  JUDGE